584 A.2d 101

**M & G CONVOY, INC., et al.**

v.

**Henry L. MAUK.**

**No. 279, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 17, 1991.

John D. Kromkowski (Rudolph L. Rose, David A. Skomba and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellants.

Robert J. Zarbin (Donald S. Saiontz and Saiontz & Kirk, P.A., on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and ROSALYN B. BELL and KARWACKI, JJ.

ROSALYN B. BELL, Judge.

This case arises from a workers' compensation claim filed with the Maryland Workers' Compensation Commission (Commission). The employerand insurer appealed the Commission's decision to the Circuit Court for Cecil County. That court remanded the case to the Commission to consider an issue which, while not explicitly raised before the Commission, must be resolved for a full adjudication of the case. We will affirm the remand and affirm the circuit court's decision that, under the circumstances of this case, the mere receipt of benefits under the workers' compensation laws of another state does not bar the claim for such benefits in Maryland.

## FACTS

Henry L. Mauk was an employee of M & G Convoy, Inc. (M & G), a Pennsylvania corporation. On April 11, 1985, Mauk was attempting to chain automobiles onto a trailer when he slipped and fell off the trailer, injuring his back, right shoulder and right hip. This accident occurred in Maryland. On May 2, M & G filed a Notice of Compensation Payable with the Bureau of Occupational Injury and Disease Compensation of the Commonwealth of Pennsylvania. Mauk neither requested that this Notice of Compensation be filed nor signed the application. Mauk began receiving weekly temporary total disability benefits in the amount of $336 in accordance with the Pennsylvania compensation statute. M & G continued to make these payments until a much later date.[1] In the meantime, on August 21, 1986, Mauk filed a claim with the Maryland Commission, based on the identical accident. On September 23, 1986, the Commission entered an award, subject to further hearing, finding that Mauk had sustained an accidental injury arising out of and in the course of his employment, and granting temporary total disability benefits. On August 4, 1987, Mauk filed issues with the Commission, raising the nature and extent of the permanent partial disability to his back, right shoulder and right hip, as well as whether he was permanently, totally disabled due to the combination of those injuries. On August 11, 1987, counsel for M & G filed an "Objection to Issues Filed" with the Commission. Specifically, the "objection" stated that Mauk was "desirous of discharging his attorney and that Issues [had] been filed without [Mauk's] knowledge." Apparently, this was not accurate. Counsel also pointed out that Mauk was being paid under Pennsylvania law and claimed that jurisdiction, therefore, was in Pennsylvania.

---

1. Neither the Commission nor the circuit court made a finding on the precise date: the Commission, seemingly because it had no evidence of the date; the circuit court, because it remanded the issue to the Commission.

At a hearing before the Commission on January 22, 1988, M & G's counsel orally raised the issue of "jurisdiction" and "election of remedies." Subsequently, the Commission entered an order that Maryland had jurisdiction, that Mauk received temporary total disability benefits under Pennsylvania law, and had sustained a 50 percent permanent partial disability under "other cases"[2] as a result of the injury to his back, right shoulder, and right hip.

M & G moved for a rehearing, which was denied. M & G and its insurer, Ryder Systems, Inc. (Ryder), appellants, then filed an appeal and a motion for summary judgment in the circuit court. M & G and Ryder alleged that jurisdiction did not exist in Maryland, but that, if it did, as a matter of law M & G was due a credit for monies paid pursuant to the Notice of Compensation under Pennsylvania law. On November 21, 1989, Mauk filed his response and memorandum to appellants' motion. After a hearing, the circuit court denied the summary judgment motion, finding that there was jurisdiction. The court remanded the matter to the "Commission to determine what, if any, credit is due."

Appellants appeal, contending the circuit court erred

—in failing to find Mauk's election of a Pennsylvania remedy barred recovery under the Maryland Workers' Compensation Act as a matter of law;

—in failing to find appellants were entitled to credit in the amount of $38,124, as a matter of law; and

—in remanding the case to the Commission without deciding all outstanding issues on appeal in the circuit court.

## JURISDICTION

Appellants make several arguments to support their position that, once appellee accepted benefits under Pennsylva-

---

**2.** "Other cases" refers to permanent partial injuries to parts of the body not specifically listed in the statute. A claimant may receive benefits under "other cases" after receiving an award for temporary total disability benefits. R. Gilbert & R. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 9.4–2 (1988).

**398**

nia's workers' compensation law, he was barred from receiving benefits under Maryland's workers' compensation law.[3] We will deal with these arguments separately.

*—Magnolia, McCartin* and *Thomas—*

Appellants rely on a trilogy of United States Supreme Court decisions with some gloss from a Maryland case to support their first argument. We will look first to the Supreme Court decisions.

Prior to 1943, with virtual unanimity, state courts had held that a prior award under the workers' compensation laws of another state was not a bar to an award under the local workers' compensation law provided that the prior award was deducted from the present award. 4 Larson, *The Law of Workmen's Compensation* § 85.10 at 16–19 (1990). *See also* Restatement (First) of Conflict of Laws § 403 (1934). Then, in 1943, a substantial change occurred.

The Supreme Court held in *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), that an injured employee could pursue his or her remedy in both Texas or Louisiana, but having chosen to pursue the remedy in the one jurisdiction, namely Texas, where the award was res judicata, the full faith and credit clause precluded him from seeking a remedy on the same grounds in Louisiana. *Magnolia,* 320 U.S. at 444, 64 S.Ct. at 216. The Court predicated its decision on the full faith and credit clause of the United States Constitution, holding that the Texas decision was a final one. *Magnolia,* 320 U.S. at 442, 64 S.Ct. at 215.

A few years later, the Supreme Court, again dealing with the full faith and credit clause in a workers' compensation case, held that the employee was not estopped from proceeding in Wisconsin, despite the receipt of benefits in

---

**3.** Ordinarily, facts necessary to a legal determination are not a proper subject for a summary judgment. *O'Hara v. Kovens,* 305 Md. 280, 300, 503 A.2d 1313 (1986). Arguably, that would have been the case here. None of the parties has raised that argument on appeal, however, so we will not reach that question.

Illinois. *Industrial Commission of Wisconsin v. McCartin,* 330 U.S. 622, 630, 67 S.Ct. 886, 890, 91 L.Ed. 1140 (1947). The Court limited the effect of *Magnolia* to those cases in which the "unmistakable language" of the statute made the remedy exclusive for purposes of the full faith and credit clause. *McCartin,* 330 U.S. at 628, 67 S.Ct. at 889. In *McCartin,* the Court reasoned that, because the Illinois law did not provide the "unmistakable" language necessary to invoke the full faith and credit clause and make the remedy exclusive, "the rule that workmen's compensation laws are to be liberally construed in furtherance of the purpose for which they were enacted," (presumably, full relief) must be followed. *McCartin,* 330 U.S. at 628, 67 S.Ct. at 889.

After considerable silence on the subject, the Supreme Court revisited the issue in 1980 in *Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980). The Court rendered a decision with a plurality of four with three justices concurring and two dissenting. The plurality in *Thomas* recognized that *Magnolia* had dramatically changed the law and that *McCartin* attempted to redress that change without overruling *Magnolia. Thomas,* 448 U.S. at 273–74, 100 S.Ct. at 2657. In actuality, the plurality accepted much of *McCartin* while concluding "that the substantial interests of the second State in these circumstances should *not* be overridden by another State through an unnecessarily aggressive application of the Full Faith and Credit Clause, as was implicitly recognized at the time of *McCartin.*" *Thomas,* 448 U.S. at 285, 100 S.Ct. at 2663 (emphasis added). The three concurring justices expressly stated they would not overrule either *Magnolia* or *McCartin. Thomas,* 448 U.S. at 289, 100 S.Ct. at 2665. They interpreted the situation in *Thomas* on the basis of the decision in *McCartin:* "I agree with the plurality that *McCartin,* rather than *Magnolia,* is controlling as between the two precedents since the Virginia Workmen's Compensation Act lacks the 'unmistakable language' which *McCartin* requires if a workmen's compensation award is to

preclude a subsequent award in another State." *Thomas*, 448 U.S. at 289–90, 100 S.Ct. at 2665.

Appellants' interpretation of this line of cases provides an interesting juxtaposition of the dissent in *Thomas* and the personalities involved. The dissent, they note, brought together an interesting pairing of now Chief Justice Rehnquist and Justice Marshall. They both agreed with the *Magnolia* decision and disagreed with *McCartin*. Justice Rehnquist referred to *McCartin* as "analytically indefensible" and stated that the two cases are "admittedly inconsistent precedents." [4] *Thomas*, 448 U.S. at 290, 100 S.Ct. at 2665. Appellants then analyze the present make-up of the Court and conclude that the position of the dissent would now be the position of the Court; hence, we should follow *Magnolia* as opposed to *McCartin*. It is interesting that of the *Thomas* Court, the two dissenters, two of the plurality, and one of the concurrence remain on the Court. Two of the plurality and two of the concurrence opinion have been replaced.

While the attention of commentators, prognosticators and academicians will often focus on such speculation, that is not our function and we decline to craft our opinion based on a perceived prospective shift in the opinions of the Supreme Court without a compelling trend. Appellants would have us conclude that the principal basis for the *McCartin* decision was that a settlement contract included a reservation of the right to proceed under the Wisconsin law, as well as Illinois. That position does not withstand scrutiny. Had that been the principal point in *McCartin*, the Court would have discussed that first and ended its opinion there. Clearly, the Court wanted to make the larger and broader statement that the language of exclusiveness must be unmistakable, and relied on the purpose of

---

**4.** We concur that *Magnolia* and *McCartin* are inconsistent because the suggestion in *Thomas* that the language of the Texas statute is unmistakable in providing that the remedy is exclusive for purposes of the full faith and credit clause does not withstand scrutiny. That *McCartin* is analytically indefensible presses too far.

the legislation. As the plurality in *Thomas* noted, "the Court could have relied exclusively on the contract provision reserving the employee's rights under Wisconsin law to distinguish the case from *Magnolia....*" *Thomas,* 448 U.S. at 268, 100 S.Ct. at 2654.

Appellants argue that the Maryland Court of Appeals would follow *Magnolia* rather than *McCartin.* To support this argument, appellants rely upon *Cooper v. Wicomico County,* 278 Md. 596, 366 A.2d 55 (1976), in which the Court held that the retroactive application of supplemental workers' compensation benefits was unconstitutional. In *Cooper,* the Court of Appeals cited *Magnolia,* and not *McCartin,* for the proposition that another state may not increase the judgment for the same injury. *Cooper,* 278 Md. at 599, 366 A.2d 55. The Court of Appeals cited to *Magnolia* because *Magnolia* supported that proposition, while *McCartin,* without contradicting the proposition, did not. This would seem sufficient reason for the choice of cases without divining some devious desire on the part of the Court of Appeals to circumvent the decision of the Supreme Court in *McCartin.*

Appellants' speculation that the Court of Appeals would follow *Magnolia* is best answered by the opinion in *Wood v. Aetna Casualty & Surety Co.,* 260 Md. 651, 273 A.2d 125 (1971). In *Wood,* the Court of Appeals determined the general rule relating to election of remedies and recovery in another state. *Wood,* 260 Md. at 657, 273 A.2d 125. The Court held the right to recover depends upon the workers' compensation act of the state where the claimant *first* elected. The Court stated:

> "[A]n award already obtained under the workmen's compensation act of one state would not bar a proceeding under another applicable state act (provided the amount paid by a prior award in the first state will be credited on the second award), *unless the act under which the award was first made was designed to preclude recovery of a further award under another state's law.*" (Emphasis added.)

*Wood,* 260 Md. at 657, 273 A.2d 125; *see McCartin,* 330 U.S. at 627-28, 67 S.Ct. at 889-90; *Kacur v. Employers Mutual Casualty Co.,* 253 Md. 500, 504, 254 A.2d 156 (1969); Restatement (First) of Conflicts § 403 (1934, 1948 Supp.); *see also* Restatement (Second) of Conflicts § 182 (1971); 4 *Larson, supra,* § 85.00. That has been and remains the law of Maryland despite appellants' criticism of *McCartin.* For example, this Court has recently ruled that a denial of benefits under Virginia's worker's compensation laws did not bar the Maryland Commission from hearing a claim for the same benefits. *R & T Construction v. Judge,* 82 Md.App. 700, 573 A.2d 96, *cert. granted,* 321 Md. 46, 580 A.2d 1066 (1990).

—Pennsylvania Law—

█ Appellants next argue that Pennsylvania law precludes recovery of permanent partial benefits because appellee's injury falls under "other cases." Appellants, in an earlier motion before the circuit court, although not in their brief, admitted that Pennsylvania law does provide for permanent partial benefits for the total loss of the use of scheduled parts. *Keller v. Workmen's Compensation Appeal Board,* 89 Pa.Cmwlth. 477, 493 A.2d 124, 125 (1985). Appellants' position is that appellee could not secure benefits for permanent partial disability in Pennsylvania under the circumstances of this case where the disability did not involve scheduled parts; hence, this renders the statute exclusive. Appellants refer us to no case or statute which states categorically that proceeding under the Pennsylvania statute is an exclusive remedy and that proceeding under that worker's compensation law bars further action in another state. Nor do they refer us to a case holding that the absence of a particular remedy in the originating state renders the statute exclusive. In fact, the possible availability of permanent partial in Pennsylvania even if not in this case, at least on the surface, would support the right to proceed in Maryland. In any event, we see no unmistakable language as required by *McCartin.* We see only circum-

stances from which one could infer an intention to make the Pennsylvania statute exclusive. This does not rise to the level necessary to overcome the avowed remedial purpose of workers' compensation laws.

—Public Policy—

Appellants also argue that appellee has made a binding election to proceed in Pennsylvania and, therefore, should be precluded from proceeding in Maryland as a matter of public policy. Appellants point to a number of Tennessee cases which have adopted the rule that, where the insurer and employer have shown that a claimant has taken any affirmative action to seek recovery under the law of a foreign state, or has voluntarily, deliberately and with full knowledge of the options accepted foreign benefits, he or she is precluded by this election and is not entitled to proceed in the home state. *See e.g., True v. Amerail Corp.*, 584 S.W.2d 794, 797 (Tenn.1979) (where the court was unwilling to "sanction course of conduct that would result in what is essentially a single cause of action being made the subject of lawsuits in two states, absent compelling considerations...."); *Thomas v. Transport Insurance Co.*, 532 S.W.2d 263, 267 (Tenn.1976) (whether claimant was estopped from claiming benefits in Tennessee because he made election to receive benefits under Arkansas law was question of fact). We do not see that issue here. That appears to be the law in Tennessee, but not in Maryland. *Wood*, 260 Md. at 657, 273 A.2d 125.

## REMAND

At the hearing on the summary judgment motion, the circuit court quickly disposed of the jurisdiction issue. It did express considerable concern over the issue of what credit, if any, the employer was entitled to receive. The court pointed out to counsel for appellants that the issue of credit was not mentioned before the Commission; the court was certainly correct.

**404**

Counsel for appellants contended that, because the issue of election of remedies was raised before the Commission as an absolute bar to Maryland jurisdiction, the issue of credit was inferentially raised. At the hearing, counsel for appellants stated:

> "I would say Maryland would have jurisdiction except the claim was filed in Pennsylvania. He's been collecting temporary total ever since in Pennsylvania for about, for three years now, and that he has elected Pennsylvania as his forum, and that this matter should proceed in Pennsylvania."

Appellants point out that, if appellee can pursue his remedy in both jurisdictions, the general rule is that an award already obtained under the Workers' Compensation Act in one state does not bar a proceeding under another Act, provided that the amount paid in the first state is credited in the second. *Wood,* 260 Md. at 657, 273 A.2d 125. Hence, it claims that since the Commission made an award, credit has been raised as an issue. Moreover, appellants claim the Commission did give a credit. In the award of compensation, the Commission ruled it had jurisdiction and specified:

*       *       *       *       *       *

> "2.   TEMPORARY TOTAL DISABILITY: claimant paid in Pennsylvania; based on an average weekly wage of $332.00 for an accidental injury sustained on April 11, 1985;
>
> "3.   PERMANENT PARTIAL DISABILITY: 50% under 'Other Cases' as a result of the injury to the back, right shoulder and right hip; at the rate of $218.00, payable weekly, beginning at end of benefits paid for temporary total disability, for a period of 333 weeks pursuant to the Provisions of Section 36(4a) of Article 101."

Appellants contend these findings established the basis for the computation of the amount of the award and the credit; hence, the Commission, in fact, did determine the credit. A flaw in appellant's position is that no date

was established by the Commission for the termination of the temporary total disability.[5] Appellants' answer to this is that maximum medical improvement was reached on May 23, 1986 and that is the controlling date. The Commission made no such finding, nor does the medical evidence in the record extract conclusively establish this as the date. Arguably, the failure to find a date for beginning permanent partial disability is immaterial so far as any credit is concerned because no credit was provided for on the award for permanent partial disability. Appellants, however, do not make that argument. Instead, they contend the circuit court erred in failing to determine how much credit was due, remanding the case to the Commission. Appellants argue that, since there is no question about the date of May 23, 1986, this means that the circuit court had the information upon which to decide the credit. According to appellants, the circuit court could and should make that determination. Two problems immediately appear. First, counsel for appellants suggested May 23, 1986 as the date the temporary total award ended. The court never made that finding or any finding about the date. That may be the date upon which it ended, but we see nothing in the record extract beyond appellants' allegation to support it. Review by the circuit court in a workers' compensation case may be de novo or on the record. The instant case was before the court strictly on the record. The circuit court may only consider and rule on matters raised and decided by the Commission or on relevant matters as to which there was evidence before the Commission. *Pressman v. State Accident Fund*, 246 Md. 406, 415, 228 A.2d 443 (1967).

Second, counsel for appellants said that the court could determine the credit. Counsel never proffered the formula or method of computation other than to tell the court that "$65,000 worth of compensation was paid. I don't want to

---

**5.** Also, as far as we can determine, the detailed printouts on which appellants rely to establish credit were not presented to the Commission.

get back down to the Commission level and have to say you can only apply this credit to temporary total disability."

Appellants argue that they are entitled to a review of the case before any remand. Appellants point us to Art. 101, § 56(a) which says, in pertinent part:

"If the court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed, modified, or remanded to the Commission for further proceedings."

Appellants interpret this to mean that the circuit court must determine whether the Commission has acted within its powers and correctly construed the law and facts before a remand.

While not specifically provided for in Art. 101, § 56(a), a remand to the Commission to decide an issue within its purview, but not decided by it, without completing appellate review, is an entirely appropriate procedure. The circuit court determined that the Commission had failed to make a finding which was a necessary prerequisite to a full review by the court. Judicial economy and efficiency dictates and demands that the case be remanded under such circumstances.

## DECIDING ALL ISSUES

Appellants complain the circuit court did not decide all the issues. Appellants suggest that several remain undecided, but only specify one, namely, the award of a credit. We have dealt with the credit issue and, as stated in *Pressman*, 246 Md. at 415, 228 A.2d 443:

"The reviewing court considers and passes only on matters covered by the issues raised and decided below or on relevant matters as to which there was evidence before the Commission."

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.